**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**In re:**

**Louis A. Gencarelli, Sr.**

| | | |
|---|---|---|
| **UPS CAPITAL BUSINESS CREDIT,** | : | |
| | : | |
| **Appellant** | : | |
| | : | |
| **vs.** | : | **C.A. No.: 05-39T** |
| | : | **Bk. No.: 04-10630** |
| **LOUIS A. GENCARELLI, SR., et al.,** | : | **Bk. No.: 04-10682** |
| | : | |
| **Appellee** | : | |

**On Appeal from the United States Bankruptcy Court for the District of Rhode Island**

**BRIEF OF APPELLEE LOUIS A. GENCARELLI, SR.**

Joseph P. Ferrucci (#4231)
Christopher M. Mulhearn (#5188)
**Ferrucci Russo, P.C.**
55 Pine Street, 4th Floor
Providence, RI 02903
Tel.: (401) 455-1000
Fax.: (401) 455-7778

Dated: May 31, 2005

# TABLE OF CONTENTS

Table of Authorities .......... ii

Table of Contents .......... i

Introduction .......... 1

Pertinent Facts .......... 3

Argument .......... 7

1. The Bankruptcy Court Properly Invoked the Single Federal Standard Under §506(b) .......... 7

2. UPS Failed to Establish The Reasonableness Of The So-Called Prepayment Penalties Under §506(b) .......... 12

3. UPS Is Not Entitled To Recover So-Called Prepayment Penalites As An Unsecured Creditor .......... 16

Conclusion .......... 17

## TABLE OF AUTHORITIES

### Cases

*In re 1095 Commonwealth Corp.*, 236 B.R. 530 (Bankr. D. Mass 1999) ................................ 12

*In re A.J. Lane & Co., Inc.*, 13 B.R. 821 (Bankr. D. Mass. 1990) ................ 8, 9, 10, 11, 12, 14

*In re American Metals Corp.*, 31 B.R. 229 (Bankr. D. Kan. 1983) ........................ 10, 13, 14, 15

*American Surety Co. v. Sampsell*, 327 U.S. 269 (1946) ........................................................ 11

*In re Banks*, 31 B. R. 173 (Bankr. M.D. Ala. 1982) ............................................................ 14

*Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.)*, 794 F. 2d 1051 (5th Cir. 1986) .................................................................................................... 10

*In re Carey*, 8 B.R. 1000 (Bkrtcy. S.D. Cal. 1981) ............................................................... 10

*In re Carol Center*, 282 B.R. 561 (Bankr. D. N.H. 2002) ............................................ 7, 8, 11

*Dent v. Assoc. Fin. Svcs. of Am., Inc. (In re Dent)*, 137 B.R. 78 (Bankr. S.D. Ga. 1992) .......... 10

*In re Dominguez*, 51 B. R. 171 (Bankr. C. D. Cal. 1985) ..................................................... 14

*In re Duralite Truck Body & Container Corp.*, 153 B. R. 708 (Bankr. Md. 1993) ................ 9, 15

*Ferrari v. Barclays Am./Bus. Credit, Inc. (In re Morse Tool, Inc.)*, 87 B.R. 745 (Bankr. D. Mass 1988) ............................................................................................................ 10, 12, 15

*First W. Bank & Trust v. Drewes (In re Schriock Constr., Inc.)*, 104 F. 3d 200 (8th Cir. 1997) .. 10

*In re Imperial Coronado Partners, Ltd.*, 96 B. R. 997 (9th Cir. BAP 1989) .............................. 15

*Independence Bank v. Dye Master Realty, Inc. (In re Dye Master Realty, Inc.)*, 15 B.R. 932 (Bankr. W.D. N.C. 1981) .................................................................................................. 10

*Joseph F. Sanson Inv. Co. v. 268 Limited (Matter of 268 Ltd.)*, 789 F. 2d 674 (9th Cir. 1986) 10, 13

*In re Kalian*, 178 B.R. 308 (Bankr. D. R.I. 1995) ............................................................... 12

*In re Kroh Bros. Development Co.*, 88 B. R. 997 (Bankr. W.D. Mo. 1988) .............................. 15

*In re Matter of Lane Poultry of Carolina, Inc.*, 63 B.R. 745 (Bankr. M.D. N.C. 1986)............ 13

*Mellion Bank, N.A. v. Sholos (In re Sholos)*, 11 B.R. 782 (Bankr. W.D. Pa. 1981) .................. 10

*Patterson v. Shumate*, 504 U.S. 753 (1992) ............................................................................ 11

*Phillbrook v. Colodgett*, 421, U.S. 707, 713 (1975).................................................................... 8

*In re Planvest Equity Income Partners IV*, 94 B.R. 644 (Bankr. Ariz. 1988)............................ 10

*In re Scarboro*, 13 B.R. 439 (D.C. M.D. Ga. 1981)................................................................ 10

*In re Shangra-La, Inc.*, 167 F. 3d 843 (4th Cir. 1999) ............................................................ 11

*In re Skyler Ridge*, 80 B.R. 500 (Bankr. C.D. Cal. 1987)........................................................13

*U.S. v. Robinson, (In re D.C. Sullivan & Co., Inc.)*, 929 F. 2d 1 (1st Cir. 1991)......................... 7

*Unsecured Creditors' Committee v. Walter E. Heller & Co. Southeast, Inc.*, 768 F. 2d 580 (4th Cir. 1985)................................................................................................................................ 10

*Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156 (1946).............................. 11

*In re Virginia Foundry Co., Inc.* 9 B.R. 493 (D.C. W.D. Va. 1981)........................................ 10

*In re Welzel*, 275 F. 3d 1308 (11th Cir. 2001) ................................................................. 8, 10

## Statutes


11 U.S.C. §§330(a)(1) .......... 9

11 U.S.C. §365(b)(1)(B) .......... 12

11 U.S.C. §502 .......... 9

11 U.S.C. §502(b)(1) .......... 8

11 U.S.C. §503(b)(1)(A) .......... 9

11 U.S.C. §503(b)(2) .......... 9

11 U.S.C. §506(b) .......... passim

**Introduction**

UPS Capital Business Credit's ("UPS") secured claims (Numbers 37 and 38) in connection with certain so-called prepayment penalties originally came to be called for hearing before the Bankruptcy Court on October 7, 2004. On that date, after a full hearing, UPS elected not to present any evidence whatsoever, and instead relied solely on the legal arguments of counsel. After oral argument, the Bankruptcy Court determined that UPS' Claims Nos. 37 and 38 were to be reviewed, and passed upon, in accordance with, and pursuant to, §506(b) of the Bankruptcy Code. Even more, Votolato, J. found that in this case §506(b) preempted state law with respect to the addition of reasonable fees, costs or changes to an oversecured claim in a bankruptcy proceeding and that a "single" federal standard should apply to their allowance.

Upon the Bankruptcy Court's ruling, UPS requested "another chance" to present and introduce evidence for the limited purpose of establishing the "reasonableness" of the so-called prepayment penalties sought by UPS.

On December 15, 2004, UPS introduced its purported evidence of "reasonableness" before the Bankruptcy Court at an evidentiary hearing. At the conclusion of UPS' presentation, evidence was closed, its counsel rested, and the parties' respective counsel provided summation arguments to the Bankruptcy Court. On the following day, at the Bankruptcy Court's request, a chambers conference was scheduled. During the course of the chambers conference, Votolato, J. offered to UPS yet another opportunity to present evidence – without UPS' having requested the same – insofar as the Bankruptcy Court believed that UPS had not yet made its case as required by §506(b).

Subsequently, in December 22, 2004, UPS got its "third bite at the apple" and was, again, permitted to argue its case and present evidence, over the debtors' objection. Thereafter, Votolato, J. decided the matter.

In the opening to his Decision and Order that gives rise to the instant appeal, Votolato, J. properly framed the issue presented to the Bankruptcy Court, and the standard that applied in connection therewith:"[A]t issue here is the enforceability of the prepayment penalties called for in creditor, UPS Capital Business Credit's ("UPS") loan documents. UPS contends that the prepayment penalty is enforceable, *as is, period*! The Debtors [Gencarelli] objection on the ground that, to be enforceable, a prepayment penalty must be rationally calculated, reasonable in amount, and not simply an arbitrary charge." *See Decision & Order Denying UPS Capital Business Credit's Claim Nos. 37 & 38, Votolato, J., dated January 19, 2005 (the "Decision & Order"), at UPS' A41.*

Thereafter, subsequent to conducting no less than three (3) hearing regarding the foregoing, Votolato, J., just as properly, determined that "[A]fter being allowed more than ample opportunity to present evidence as to the reasonableness of its claims, *UPS has virtually declined or waived* the invitation(s) to do so. Accordingly, the Debtors' [Gencarelli] Partial Objection is SUSTAINED, and UPS' Claims 37 and 38 are DISALLOWED." *See the Decision & Order, at UPS' A41*. (emphasis supplied).

UPS' assertion that the Bankruptcy Court abused its discretion and rendered a decision that is the offspring not of a defined standard, but of uncertainty and confusion is rebutted by both the travel of this matter, as well as by the extended and thoughtful manner in which the same was determined.

As early as October 7th, UPS was aware that §506(b) preempted state law, and, further, that in reviewing UPS' claims for so-called prepayment penalties a "single" federal standard of "reasonableness" would be applicable to UPS' claims under §506(b). UPS never objected to, appealed from, or otherwise complained about the Bankruptcy Court's ruling. In fact, to the contrary, UPS simply requested an opportunity to present evidence in order that it may "prove" its claims under §506(b).

The Bankruptcy Court permitted UPS to present and introduce evidence on two (2) separate occasions in support of its position – December 15th and December 22nd, respectively. Notwithstanding that UPS was aware more than sixty (60) days earlier as to what was required in order for it to "prove" the "reasonableness" of its claims for so-called prepayment penalties, on both occasions, UPS failed to prove that it had sustained or incurred any damage or harm as a result of the prepayment of the subject loans. As such, having failed to meet the requisites under §506(b), the Bankruptcy Court denied UPS' Claims Nos. 37 and 38.

Clearly, there was neither uncertainty or confusion on the part of the Bankruptcy Court. By contrast, the Bankruptcy Court gave UPS every opportunity to prove its case in accordance with §506(b), and UPS simply failed. To the extent there was error committed below that error was committed by UPS in failing to present and introduce competent and appropriate evidence to support its claims for so-called prepayment penalties under §506(b), and not by the Bankruptcy Court.

## **Pertinent Facts**

On February 14, 2002, appellee Louis A. Gencarelli, Sr. ("Gencarelli"), and debtor Bess Eaton Donut Flour Company, Inc. ("Bess Eaton"), entered into two (2) loan transactions with UPS, the first for $5,061,133.00 (the "$5 Million Note"), and the second for $1,969,128.00 (the

"$2 Million Note"). *See Decision & Order, at UPS' A41.* Both notes carried floating interest rates calculated at prime plus one and on quarter percent (1.25%), as well as sliding scale prepayment penalties for the first five (5) years. *Id., at UPS' A41-A42.* If the loans were paid off in year one there would be a five percent (5%) penalty; year two (2), a four percent (4%) penalty; year three (3), a three percent (3%) penalty, and so on through year five (5). *See Decision & Order, at UPS' A42.*

On March 1, 2004, Bess Eaton filed a voluntary Chapter 11 bankruptcy proceeding, and two (2) days later Gencarelli filed an individual voluntary insolvency proceeding. *Id.* At the insistence of Tim Horton's, the two (2) bankruptcy cases, *to wit*, Bess Eaton and Gencarelli, were filed in the Bankruptcy Court to facilitate and consummate a previously negotiated sale of Gencarelli's Bess Eaton donut business to Tim Horton's, its Canadian business rival. *Id.*

At auction, after spirited competition at the Bankruptcy Court authorized sale, Tim Horton's was the successful bidder for the majority of Bess Eaton assets for $41,600,000.00 - $6,080,000.00 more than the agreed-to pre-petition sale price, resulting in funds sufficient to pay all creditors in full, plus interest. *Id.* As a direct result of this sale, UPS was paid in excess of $6.8 Million, in principal and interest in connection with the $5 Million Note and $2 Million Note (collectively, the "Notes"), respectively. *Id.* Ultimately, all that remained unpaid and in dispute from UPS' perspective were the so-called prepayment penalties called for under each of the Notes. *Id.* Because the Notes were paid off in the third year, UPS sought a three percent (3%) prepayment penalty on each - $146,077.00 under the $5 Million Note, and $56,745.00 on the $2 Million Note for a total of $202,822.00 – UPS' so-called Claims Nos. 37 and 38. *Id.*

Gencarelli objected to UPS' so-called Claims Nos. 37 and 38, respectively. Gencarelli's objection to these claims was initially heard by the Bankruptcy Court on October 7, 2004, at

which time UPS presented no evidence in support of its claims. *Id.* At the conclusion of the October 7th hearing, which consisted of the arguments of counsel only, Votolato, J. determined that 11 U.S.C. §506(b) preempted state law with respect to the addition of reasonable fees, costs or charges to an over-secured claim in a bankruptcy proceeding and "that a single federal standard should apply to their allowance." (citations omitted.) *See Bankruptcy Court Order, dated October 8, 2004, at UPS' A36.* UPS never appealed Votolato, J.'s October 8th decision, never challenged or objected to the same, or otherwise requested that the Bankruptcy Court reconsider its determination regarding the applicability of §506(b). Under the standard established by §506(b) and based upon the absent evidentiary record before the Bankruptcy Court regarding reasonableness, Votolato, J. determined that there was no basis under §506(b) upon which to allow UPS' claim for prepayment penalties. *Id.*

Notwithstanding, UPS requested an opportunity to present evidence to the Bankruptcy Court relative to its claims for the so-called prepayment penalties under the Notes, and Votolato, J. indulged UPS' request. *See Decision & Order, at UPS' A43.* The matter came to be called before the Bankruptcy Court on December 15, 2004. UPS presented only the testimony of Jeffrey B. Dahms ("Dahms"), who manages UPS' "sold loans portfolio", in support of its claims. *Id.* When asked as to how the so-called prepayment penalties were calculated or established, Dahms stated, surprisingly, that he "had no knowledge," and, instead, concentrated on the process UPS follows in selling notes in the secondary market. *See Decision & Order, at UPS' A43-A44.* In fact, Dahms testified that to the extent that UPS sustained any losses as a result of the prepayment of the Notes the same was a function of the terms of its contractual relationship with the purchaser of the Notes on the secondary market, Union Planters ("Union"), a contract to which neither Gencarelli nor Bess Eaton were parties. *See Transcript of December 15th hearing,*

*at pp. 27-30.* Even more, when pressed on cross-examination by Gencarelli as to whether UPS can provide proof of any actual or sustained losses or damages stemming from the prepayment of the Notes, Dahms responded with a resounding "no." *See Transcript of December 15th hearing, at p. 36; see also, Transcript of December 15th hearing, at pp. 37-40.* As such, according to the Bankruptcy Court, Dahms' testimony turned out to be completely irrelevant to the issue for which the matter was "reopened". *See Decision & Order, at UPS' A44.*

Overly cautious so as to not simply deny UPS' claims out of hand, and having an interest in reaching a result based upon a rational consideration of the merits of the dispute, rather than on the "default mode" in which UPS left things on December 15th, the Bankruptcy Court, *sua sponte*, gave UPS another chance to present and introduce relevant evidence on the reasonableness of the so-called prepayment penalties under the Notes. *Id.* This further evidentiary hearing was scheduled for December 22, 2004. *Id.*

Over Gencarelli's objection with respect to opening the matter for evidence for a "second time," evidence was taken, *de bene*, again through Dahms, who, as he did previously, testified in generalities and assumptions as to what typically happens with respect to the funds received from prepaid loans, and, as before, provided no assistance to the Bankruptcy Court relative to the standard established in §506(b) relative to the prepayment of the Notes and any losses or damages sustained by UPS as a result. *Id.* In fact, Dahms essentially testified that the prepayment of the Notes did not impact or affect its ability to fund other USDA guaranteed loans at or about the time of the prepayment of the Notes. *See Transcript of December 22nd hearing, at pp. 39-41.* Simply put, once again, he provided nothing to the Bankruptcy Court *Id.*

In fact, contrary to UPS' position, Dahms admitted that he was clueless as to how prepayment penalties were calculated, the rate(s) at which UPS re-loaned the funds, or how long

it took UPS to get said funds back into the marketplace. *Id. See also, Transcript of December 22nd hearing, at pp. 45-54.* Even more, Dahms could not articulate whether new borrowers paid origination fees, points, attorneys' fees, or other costs in connection with re-loaning of these funds. *Id.* Upon the conclusion of UPS' presentation, and following counsel's respective arguments, the Bankruptcy Court issued the Decision & Order wherein Votolato, J. denied UPS' Claims No. 37 and 38 in full, sustained Gencarelli's objection thereto, struck the purported evidence presented by UPS on December 22nd, and, finally, apologized to Gencarelli for the inconvenience of having to oppose the additional hearings in this matter. *See Decision & Order, at UPS' A46-A47.*

On January 19, 2005, judgment consistent with the Decision & Order was entered by the Bankruptcy Court. Thereafter, UPS filed its Notice of Appeal, and claimed error. *See UPS' Notice of Appeal, at UPS' A48.*

## **Argument**

### 1. **The Bankruptcy Court Properly Invoked the Single Federal Standard Under §506(b)**

Gencarelli agrees with UPS' self-characterization as an oversecured creditor in the instant case. As such, it is beyond dispute that 11 U.S.C. §506(b) is applicable in this matter. Thus, the Bankruptcy Court committed no error in this regard. Similarly, the Bankruptcy Court correctly utilized a "single" federal standard to establish "reasonableness" relative to the so-called prepayment penalties under §506(b).

The basic rule in bankruptcy proceedings is that creditor claims are allowable as of the petition date, so long as such claims are enforceable against the debtor and property of the debtor, and does not include postpetition interest. *In re Carol Center*, 282 B.R. 561, 564 (Bankr. D. N.H. 2002). *See also, U.S. v. Robinson, (In re D.C. Sullivan & Co., Inc.)*, 929 F. 2d 1, 2 (1st

Cir. 1991); 11 U.S.C. §502(b)(1). However, §506(b) establishes an exception to the basic rule for oversecured creditors, such as UPS. *In re Carol Center*, at 564.

11 U.S.C. §506(b) provides, in pertinent part:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any *reasonable* fees, costs, or charges provided for under the agreement under which such claim arose. (emphasis supplied)

In interpreting §506(b) the Court "must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *In re Welzel,* 275 F. 3d 1308, 1317 (11th Cir. 2001), citing *Phillbrook v. Colodgett,* 421, U.S. 707, 713 (1975). Clearly, a plain reading of §506(b) indicates that reasonableness is the governing standard relative to fees, costs and/or charges, including prepayment penalties.

Section 506(b) specifically establishes a different standard for the allowance of the claims of oversecured creditors. Under §506(b) the claims of oversecured creditors may include interest and "reasonable fees, costs and charges", incurred both before and after the petition date, so long as such interest and fees are "provided for under the agreement." *In re Carol Center*, at 565. Section 506(b) itself does not include any requirement that the agreement regarding such interest and fees be enforceable against the debtor. *Id.* An ordinary interpretation of the statutory language of §506(b) compels the conclusion that the so-called prepayment penalties sought by UPS in this matter are the types of "charges" which §506(b) governs. *See In re A.J. Lane & Co., Inc.*, 13 B.R. 821, 823 (Bankr. D. Mass. 1990).

Section 506(b) clearly indicates an intention to impose a "single" federal standard in terms of determining the "reasonableness" of prepayment penalties. *In re A.J. Lane & Co., Inc.*,

at 824. The entire statutory framework of the Bankruptcy Code bears this out. It is true, generally, that the enforceability of claims is controlled by state law, except for certain claims such as claims for future rent or for damages from termination of employment. *See, generally,* 11 U.S.C. §502. But claims that are senior to general, unsecured claims bear special scrutiny. *In re A.J. Lane & Co., Inc.,* at 824. Only "actual, necessary costs and expenses of preserving the estate" are granted a first priority. 11 U.S.C. §503(b)(1)(A). Included are fees of attorneys (and prepayment penalties), the same type of claim covered by §506(b); these must be "reasonable." 11 U.S.C. §§330(a)(1), 503(b)(2). *See also, In re A.J. Lane & Co., Inc.*, at 824.

There is no basis in the statutory language of §506(b) for concluding that the "reasonableness" standard should be applied to costs or changes differently than to attorneys' fees. *In re Duralite Truck Body & Container Corp.,* 153 B. R. 708, 713 (Bankr. Md. 1993). As such, they should be treated the same. Accordingly, the reasonableness of costs and charges, such as prepayment penalties, under §506(b) is a matter of federal law. *Id.*

"Few would suggest that the standard of reasonableness governing fees under §330(a)(1) should be anything other than a single, federal standard. The protection of general creditors from unreasonable fees enjoying first priority is central to the bankruptcy policy favoring a fair distribution to creditors. Yet this policy applies with even greater force to charges under §506(b). The claim of a secured creditor to his collateral is of course senior to that of even a first priority claimant such as an attorney rendering services to the estate. It would make no sense to interpret 'reasonable' as it appears in §506(b) according to state law while applying a federal standard to 'reasonable' under §330(a)(1) governing attorneys' fees." *In re A.J. Lane & Co., Inc.*, at 824.

Most courts that have faced this question agree with this interpretation.[1] *In re A.J. Lane & Co., Inc.*, at 824. In fact, a majority of courts, including all of the circuit courts of appeal, that have considered this issue, agree that state law is preempted by federal law as it relates to "fees, costs and charges" under §506(b). *See, e.g., In re Welzel*, 275 F. 3d 1308, 1313 (11th Cir. 2001) (Congress intended to alter the traditional relation between federal and state law when it enacted §506(b)); *First W. Bank & Trust v. Drewes (In re Schriock Constr., Inc.)*, 104 F. 3d 200, 202 (8th Cir. 1997) (allowing attorneys' fees although state statute expressly stated that attorneys' fees provisions in an instrument were against public policy and void); *Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.)*, 794 F. 2d 1051, 1056-1058 (5th Cir. 1986) (state standards of reasonableness governing attorneys' fees inapplicable); *Joseph F. Sanson Inv. Co. v. 268 Limited (Matter of 268 Ltd.)*, 789 F. 2d 674, 675-677 (9th Cir. 1986) (same); *Unsecured Creditors' Committee v. Walter E. Heller & Co. Southeast, Inc.*, 768 F. 2d 580, 585 (4th Cir. 1985) (court deemed it irrelevant that creditor failed to comply with state statute making attorney fee agreement enforceable only after debtor fails to pay fees following five day notice); *In re Planvest Equity Income Partners IV*, 94 B.R. 644 (Bankr. Ariz. 1988) (prepayment penalty disallowed under §506(b) only); *In re American Metals Corp.*, 31 B.R. 229, 236-237 (Bankr. D. Kan. 1983) (federal standard applied to prepayment charges after review of legislative history)[2]. *Compare Dent v. Assoc. Fin. Svcs. of Am., Inc. (In re Dent)*, 137 B.R. 78 (Bankr. S.D. Ga. 1992); *Ferrari v. Barclays Am./Bus. Credit, Inc. (In re Morse Tool, Inc.)*, 87 B.R. 745 (Bankr. D. Mass 1988); *Independence Bank v. Dye Master Realty, Inc. (In re Dye Master Realty, Inc.)*, 15 B.R. 932, 935-936 (Bankr. W.D. N.C. 1981); *Mellion Bank, N.A. v.*

---

[1] The legislative history of §506(b) also supports a single federal standard. *In re A.J. Lane & Co., Inc.*, at 824.

[2] Most courts agree that legislative intent was that §506(b) apply notwithstanding contrary state law. *In re American Metals Corp.*, at 234-235, citing *In re Virginia Foundry Co., Inc.* 9 B.R. 493, 496-497 (D.C. W.D. Va. 1981); *In re Carey*, 8 B.R. 1000 (Bkrtcy. S.D. Cal. 1981); *In re Scarboro*, 13 B.R. 439, 442 (D.C. M.D. Ga. 1981).

*Sholos (In re Sholos)*, 11 B.R. 782 (Bankr. W.D. Pa. 1981). Although many of these decisions involved attorneys' fees, the same statutory construction is warranted for prepayment charges. *In re A.J. Lane & Co., Inc.*, at 825. As such, it would be senseless for prepayment charges to be governed even in part by state law while attorneys' fees under the same statute are controlled by federal law. *Id.* Thus, the Bankruptcy Court correctly applied the federal standard in the instant matter.

Generally, it is beyond dispute that it is federal bankruptcy law, and not state law, which governs the distribution of a debtor's estate assets to creditors. *American Surety Co. v. Sampsell*, 327 U.S. 269, 272 (1946); *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 162-163 (1946). This principle and accompanying policy was crystallized when the court in *In re Carol Center* went so far as to unequivocally state that "this Court agrees with the majority view and holds that section 506(b) preempts state law with respect to the addition to an allowed claim in a bankruptcy proceeding of interest and reasonable fees, costs or charges provided for under the agreement under which such claim arose when the value of the collateral securing the claim exceeds the amount of the claim." *In re Carol Center*, at 565.

Even more, it is important to note that §506(b) makes no reference to state law. *In re Carol Center*, at 566. The Bankruptcy Code contains many examples that reveal that when Congress intends for applicable state law to apply in bankruptcy proceedings it clearly expresses that intent. *In re Carol Center*, at 566. *See also, Patterson v. Shumate*, 504 U.S. 753, 758 (1992) (citing numerous Bankruptcy Code provisions which specifically reference state law). The absence of such language in §506(b) is an indication that Congress did not intend for state law to affect the application of that subsection. *Id.*; *In re Shangra-La, Inc.*, 167 F. 3d 843, 851 (4th Cir. 1999) (distinguishing between §506(b), which created a right to attorneys' fees independent of

state law, and §365(b)(1)(B) which refers only to pecuniary loss and does not preempt the need to apply state law to determine the award of attorneys' fees.) As such, any reliance by UPS on Rhode Island law regarding prepayment penalties is misplaced in the instant case.

Thus, it is beyond dispute that the Bankruptcy Court properly and correctly applied §506(b) in passing upon UPS' Claims Nos. 37 and 38. Given UPS' status as an oversecured creditor, the Bankruptcy Court properly applied §506(b) to UPS' claims for so-called prepayment penalties.

**2. <u>UPS Failed to Establish The Reasonableness Of The So-Called Prepayment Penalties Under §506(b)</u>**

UPS takes the unsupported position that §506(b) should be read such that the so-called prepayment penalty provision under the Notes must first be "allowed", and only then subject to the reasonableness test under §506(b). *See, generally, In re Morse Tool, Inc.*, at 748. UPS' reliance on this position is misplaced and improper. In fact, subsequent decisions in the First Circuit have expressly declined to follow this reasoning and approach. *See In re 1095 Commonwealth Corp.*, 236 B.R. 530, 536 (Bankr. D. Mass 1999); *In re Kalian*, 178 B.R. 308, 317 (Bankr. D. R.I. 1995); *In re A.J. Lane & Co., Inc.*, at 825.

In *In re A.J. Lane & Co., Inc.,* Judge Queenan specifically pointed out that prior to the Bankruptcy Code the Bankruptcy Act had no express requirement that fees, costs or charges be reasonable. *In re A.J. Lane & Co., Inc.*, at 824. He found the inclusion of the reasonableness requirement in §506(b) to be a significant indicator of an intention to impose a single federal standard. *Id.* Judge Queenan reasoned that the application of a single federal standard to the scrutiny of priority charges against the estate is central to the bankruptcy policy favoring a fair and equitable distribution to creditors. *Id.*

Section 506(b) imposes two (2) requirements for the collection of an additional charge by an oversecured creditor: (1) the charge must be provided for in the agreement, and (2) the charge must be reasonable. *In re Skyler Ridge,* 80 B.R. 500, 506 (Bankr. C.D. Cal. 1987). *See also, In re 268 Limited*, at 676-678 (9th Cir. 1986). The test in determining the "reasonableness" of prepayment penalties or charges requires that the damages agreed upon to be "reasonable in light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss." *In re A.J. Lane & Co., Inc.*, citing Restatement (Second) of Contracts §356(1) (1981).

In the instant case, there is no question that the so-called prepayment penalties were, in fact, contemplated by the Notes. As such, the first requirement under §506(b) has been met. However, at no time, despite being afforded three (3) separate opportunities to do so, did UPS ever establish the "reasonableness" of the so-called prepayment penalties under §506(b).

Generally, §506(b) was designed for the benefit of creditors with the primary focus properly centering on the reimbursement nature of the provision. *In re Matter of Lane Poultry of Carolina, Inc.,* 63 B.R. 745, 749 (Bankr. M.D. N.C. 1986). This remedy was created to reimburse creditors for reasonable and necessary expenses involved in debt collection. *Id.*

In the case of *In re American Metals Corp.,* 31 B.R. 229 (Bankr. D. Kan. 1983), the court denied a creditor's request pursuant to §506(b) for the allowance of a termination charge provided for by the underlying security agreement. The court reasoned that the termination charge constituted an impermissible penalty and then went on to hold as follows:

> ...this Court is of the view that §506(b) is limited to actual costs, charges or damages. Section 506(b) is an extraordinary remedy for oversecured creditors; and it should not be read so broadly as to allow all purported expenses, whether actual, estimated or illusory.

*In re American Metals Corp.,* at 237.

As in *In re American Metals Corp.*, UPS' Claims No. 37 and 38 consists of prepayment penalties under the Notes. As such, UPS' recovery is limited to actual damage or loss.

Similarly, the Bankruptcy Court for the Central District of California has described §506(b) by stating that it gives a secured creditor "a right to indemnification...for its costs and attorneys' fees." *In re Dominguez,* 51 B. R. 171, 173 (Bankr. C. D. Cal. 1985). Likewise in interpreting §506(b), another court stated that "[a] contract provision providing for attorneys' fees should be enforceable 'to the extent that it is shown that the creditor has been damaged by having to pay, or assure the payment of attorneys' fees or other collection expenses.'" Annot. 17 ALF 2d 288 § 8, at 298 (1951). *In re Banks,* 31 B. R. 173, 178 (Bankr. M.D. Ala. 1982).

In disallowing a prepayment charge, the bankruptcy court in *In re A.J. Lane & Co., Inc.* found that actual losses were easily proven since "the damage formula is simple and well established. It is the difference between the contract rate and the market rate at the time of prepayment, projected over the term of the loan then discounted to arrive at present value." *In re A.J. Lane & Co., Inc.*, at 829. Interestingly, when asked on December 22nd whether UPS had performed this very basic type of calculation in order to determine or establish the "reasonableness" of the so-called prepayment penalties, or to otherwise support UPS' position, Dahms replied, "[W]hy – for what purpose would that provide?" *See Transcript of December 22nd hearing, at p. 50.*

Clearly, UPS showed a complete disregard for the requirements of §506(b), as well as the applicable case law in failing to even endeavor to perform the most basic calculations in support of its position. In fact, it became painfully obvious during both days of Dahms' testimony that UPS made no effort whatsoever to prove its case, and establish the "reasonableness" of the so-called prepayment penalties. *See, generally, Transcripts of December 15th and 22nd,*

*respectively, hearings.* As such, UPS did not experience any "difficulties" in trying to prove the "reasonableness" of the prepayment penalties under Notes if, for no other reason, because it did not even attempt to do so. Thus, any effort on the part of UPS to argue that it was unable to prove any loss or damage because it was just "too tough" must be disregarded – UPS did not even try.

A number of other courts, in an attempt to prevent either a loss of interest income or a windfall to the creditor, have limited recovery of prepayment premiums to actual losses. *See In re Imperial Coronado Partners, Ltd.*, 96 B. R. 997, 1001 (9th Cir. BAP 1989); *In re Kroh Bros. Development Co.*, 88 B. R. 997, 1001-1002 (Bankr. W.D. Mo. 1988); *In re American Metals Corp.*, at 237; *In re Morse Tool, Inc.*, at 750. As such, the Bankruptcy Court did not commit error, but instead adhered to the well-settled rule in this regard. In this instance, UPS did not even try to help itself. UPS failed to proffer any evidence to establish "reasonableness" as it relates to the so-called prepayment penalties under the Notes.

In *In re Duralite Truck Body & Container Corp.*, at 714, the court held that actual damages are the measure of reasonableness for prepayment charges under §506(b). "A prepayment formula must affectively estimate actual damages, otherwise, the charges may operate as either a penalty on the debtor or a windfall to a lender, at the expense of other creditors of the bankruptcy estate. Only a prepayment formula which reasonably measures actual damages will be respected under §506(b)." *Id.* UPS failed to establish actual damages or loss, or even to closely approximate the same on either December 15th or December 22nd. As such, its Claims Nos. 37 and 38 were denied.

Although UPS did offer detailed testimony about loans in general, at no time did it even calculate or otherwise advance any evidence substantiating or even closely approximating any

actual losses or damages. Accordingly, under the applicable case law, the Bankruptcy Court had no choice but to correctly deny UPS' claims.

Assuming, *arguendo*, that the Bankruptcy Court did not strike the evidence presented by UPS on December 22nd it would not have altered Votolato, J.'s ultimate determination. Dahms clearly testified that he did not have any evidence nor could he advance or offer of actual damages or losses sustained by UPS as a result of the prepayment under the Notes. *See, generally, Transcript of December 22nd hearing.* Thus, even if Dahms' testimony was considered by the Bankruptcy Court, the same fell woefully short of the requirements under §506(b) to establish the "reasonableness" with respect to the so-called prepayment penalties.

**3. <u>UPS Is Not Entitled To Recover The So-Called Prepayment Penalites As An Unsecured Creditor</u>**

UPS takes the position that even assuming the Bankruptcy Court properly denied or disallowed its Claims Nos. 37 and 38, it should still be entitled to recover the so-called prepayment penalties under the Notes as a general, unsecured creditor. UPS' argument is without merit.

UPS is a secured creditor of Gencarelli. As such, its Claims Nos. 37 and 38 relative to the so-called prepayment penalties are expressly and exclusively governed by §506(b). Accordingly, UPS may not unilaterally determine that a more relaxed standard applies with respect to these claims, and that UPS should now be treated as an unsecured creditor because, through its own actions, it failed to satisfy the single federal standard under §506(b) to be entitled to the so-called prepayment penalties, as a secured creditor. As the Bankruptcy Court noted in its January 19th Decision & Order, UPS declined and/or waived its chance to prove its claims as required by the Bankruptcy Code.

To permit such a result would allow UPS to circumvent the clear and unambiguous provisions of §506(b), as well as controlling bankruptcy policy. UPS may not simply recast itself *ad hoc*. UPS failed to establish the "reasonableness" of the so-called prepayment penalties. UPS cannot now change its standing in order to bypass the provisions of the Bankruptcy Code, and determinations of the Bankruptcy Court as a result of its own failings.

## Conclusion

WHEREFORE, for the foregoing reasons, Gencarelli respectfully prays that this Court enter an order affirming and sustaining the Bankruptcy Court's Decision and Order, and accompanying Judgment, dated January 19, 2005, denying UPS'Claims Nos. 37 and 38, dismissing and denying UPS' instant appeal, awarding to Gencarelli any and all attorneys' fees, costs and/or other disbursements or expenses incurred in the defense of the instant appeal, and awarding to Gencarelli such other further relief as this Court may deem fair, just and reasonable.

Respectfully submitted,

LOUIS A. GENCARELLI, SR.

By his Attorneys,

Joseph P. Ferrucci (#4231)
Christopher M. Mulhearn (#5188)
**Ferrucci Russo, P.C.**
55 Pine Street, 4th Floor
Providence, RI 02903
Tel.: (401) 455-1000
Fax.: (401) 455-7778

Dated: May 31, 2005

**Certification**

I hereby certify that on this ~~31st~~ 1st day of ~~May~~ June, 2005, I served a true and accurate copy of the foregoing upon **Edward L. Pontacaloni, Esq. & Barbara A. Frederick, Esq.**, Updike, Kelly & Spellacy, P.C., One State Street, P.O. Box 231277, Hartford, Connecticut, 06123-1277; and **Thomas J. Cronin, Esq.**, Gunning & LaFazia, Inc., 56 Pine Street, Providence, Rhode Island, 02903, by first-class, postage prepaid mail.

Darlene Morris