UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UPS CAPITAL BUSINESS CREDIT,
Appellant,

v. C.A. No. 05-39T

LOUIS A. GENCARELLI, SR.,
et al.,
Appellees.

**MEMORANDUM AND ORDER**

ERNEST C. TORRES, Chief Judge.

**Introduction**

UPS Capital Business Credit ("UPS") has appealed from the January 19, 2005 order of the Bankruptcy Court denying UPS's claim for prepayment penalties on two commercial loans UPS made to Louis A. Gencarelli, Sr. ("Gencarelli"). The question presented is whether the Bankruptcy Court correctly determined that the prepayment penalties are not "reasonable fees, costs, or charges" within the meaning of 11 U.S.C. § 506(b). Because UPS has failed to establish that the prepayment penalties are "reasonable," the Bankruptcy Court's January 19, 2005 order is affirmed.

**Background Facts**

On February 14, 2002, UPS made two loans to the Bess Eaton Donut Flour Company ("Bess Eaton") and Gencarelli, Bess Eaton's sole shareholder (collectively, "the Debtors"). The first loan was for $5,061,133 and the second loan was for $1,969,128. Pursuant to loan agreements between the parties, the Debtors executed a $5 million note payable over a period of 30 years and a $2 million

note payable over a period of 20 years.

The notes were secured by mortgages on parcels of real property owned by the Debtors and they called for interest of 1.25% over prime on the unpaid balance. Each note also provided for a prepayment penalty if principal payments made during the first 5 years exceeded a specified amount. The prepayment penalty provision for the $5 million loan stated:

> If prepayment of more than twenty percent (20%) of the original principal balance of the loan ... is made in any consecutive twelve (12) month period [during the first five years of the loan], the prepayment premium shall be 5% of the qualifying prepayment amount in year 1; 4% of the qualifying prepayment amount in year 2; 3% of the qualifying prepayment amount in year 3; 2% of the qualifying prepayment amount in year 4; and 1% of the qualifying prepayment amount in year 5.[1]

The prepayment provision for the $2 million loan was identical except that the penalty was triggered by <u>any</u> prepayment.

In March 2004, Bess Eaton and Gencarelli filed Chapter 11 bankruptcy petitions and UPS filed claims totaling approximately $6.8 million which represented the principal balances due on the two notes plus accrued interest. UPS also claimed an additional $202,822 in prepayment penalties.

Gencarelli's estate had several million dollars more than what was needed to pay creditors and the value of the property securing UPS's loan was far in excess of UPS's claim. Nevertheless,

---

[1]After five years, the loan could be prepaid in full with twenty-one days prior written notice.

although UPS's claim for the principal and accrued interest on its two loans was allowed, in full, UPS's claim for prepayment penalties was disallowed by the trustee on the ground that UPS failed to establish that the penalties were "reasonable" charges within the meaning of 11 U.S.C. § 506(b).

The bankruptcy court held two evidentiary hearings with respect to the disallowances. At the first hearing, on December 15, 2004, Jeffrey R. Dahms, the Director of Loan Accounting for UPS, was unable to explain how the prepayment penalty had been calculated. Instead, he offered the first of several different calculations regarding the actual loss that UPS claimed to have sustained as a result of the prepayments. More specifically, Dahms testified that UPS had to return a $314,417 purchase premium paid by Union Planters Bank which purchased a portion of the $5 million loan from UPS and paid the premium because it expected to receive interest at a rate over prime for the term of the loan.

Dahms also made an alternative calculation based on the interest that UPS would have received if it had not sold a portion of the $5 million loan; if the loans had not been prepaid; and if the prime rate remained unchanged. Under that scenario, he estimated that UPS would have received $230,000 in interest on the $5 million note and $106,000 in interest on the $2 million note during the year following prepayment. In making the calculations, Dahms did not consider what UPS was able to earn by reinvesting the

amounts that were prepaid.

At the second hearing on December 22, 2004, although Dahms conceded that he had limited knowledge of the relevant facts, he provided a third measure of UPS's losses by calculating the interest that UPS would have received over the remaining term of the loans at the 5.25% rate in effect at the time of prepayment and subtracting the interest that UPS would have been required to pay over the same period in order to borrow the amount that was prepaid.

As a further alternative to that seeming non sequitur, Dahms estimated the costs that UPS would have incurred in lending the amount received from Gencarelli to another borrower on similar terms. He testified that those costs would have consisted of salary payments of approximately $133,000 to UPS employees for time spent in finding another borrower and structuring the transaction but he was unable to say whether UPS, generally, passed those costs on to the borrower in the form of an origination fee.

On cross examination, Dahms acknowledged that the amounts prepaid by Gencarelli could have been reinvested in Treasury Bonds paying interest of at least 3% but, once again, he did not factor that into his calculations.

The Bankruptcy Court noted Dahms's admissions that he was "clueless" as to how the prepayment penalties were calculated and that he was unable to explain what actual losses UPS may have

sustained because he had insufficient knowledge of the relevant facts. Accordingly, the Bankruptcy Court issued an order striking Dahms's testimony at the December 22 hearing and disallowing UPS's claim for prepayment penalties on the ground that UPS had failed to establish that the penalties were "reasonable" charges within the meaning of 11 U.S.C. § 506(b). In re Bess Eaton Donut Flour Co., Inc., 2005 WL 1367306 (Bankr. D.R.I. Jan. 19, 2005). UPS has appealed from that Order.

## Standard of Review

A bankruptcy court's rulings on questions of law are reviewed de novo, but its findings of fact are reviewed only for clear error. Sheehan v. Richardson, 315 B.R. 226, 233 (D.R.I. 2004). A bankruptcy court's findings of fact will be considered clearly erroneous "if, after a review of the entire record, we are 'left with the definite and firm conviction that a mistake has been committed.'" In re R&R Assocs. of Hampton, 402 F.3d 257, 264 (1st Cir. 2005) (quoting In re Watman, 301 F.3d 3, 8 (1st Cir. 2002) (citation omitted)).

## Analysis

### I. The "Reasonableness" Requirement

Payment of over-secured claims is governed by 11 U.S.C. § 506(b) which states:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the

> holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

[emphasis added]

A prepayment penalty is a "charge" within the meaning of Section 506(b). In re Outdoor Sports Headquarters, Inc., 161 B.R. 414, 424 (Bankr. S.D. Ohio 1993); In re A.J. Lane, 113 B.R. 821, 823 (Bankr. D. Mass. 1990). Consequently, an oversecured creditor may recover a prepayment penalty only if it is "reasonable." In re Skyler Ridge, 80 B.R. 500, 506 (Bankr. C.D. Calif. 1987) ("Section 506(b) imposes two requirements for the collection of an additional charge by an oversecured creditor: (1) the charge must be provided for in the agreement, and (2) the charge must be reasonable."). The oversecured creditor bears the burden of proving that the prepayment penalty sought is "reasonable." In re Bridge Info. Systems, Inc., 288 B.R. 556, 564 (Bankr. E.D. Mo. 2002); In re Schwegmann Giant Supermarkets P'ship, 264 B.R. 823, 829 (Bankr. E.D. La. 2001).

A prepayment penalty is a form of liquidated damages and, since the historical distinction between liquidated damages provisions that are enforceable and those that amount to unenforceable penalties turns primarily on whether the provision produces an amount that is reasonable, see J. Calimari & J. Perillo, Contracts § 14.31, at 611-12 (5th ed. 2003); 3 Dan B. Dobbs, Dobbs Law of Remedies § 12.1(1), at 8 (2d ed. 1993), the

case law regarding the enforceability of liquidated damages provisions, in general, and prepayment penalties, in particular, provides some guidance in determining whether a prepayment penalty is reasonable.

Generally, a prepayment penalty is deemed reasonable if it represents "a reasonable pre-estimate of the probable loss." J. Calimari & J. Perillo at 612. See also A.J. Lane, 113 B.R. at 828; Skyler Ridge, 80 B.R. at 500 (comparing prepayment penalties to liquidated damages provision). Provisions that result in damages that are disproportionate to the anticipated losses are deemed unreasonable. See 3 Dobbs, Law of Remedies at 8; XCO Int'l, Inc. v. Pacific Scientific Co., 369 F.3d 998, 1001-02 (7th Cir. 2004) (holding that prepayment penalties are enforceable only to the extent that actual damages may be difficult to calculate and the penalty reflects a reasonable estimate of the anticipated loss).

There is some disagreement as to whether the reasonableness of a prepayment penalty should be assessed as of the time that the loan was made or at the time of the breach. Thus, at least one court has held that a prepayment penalty is reasonable only to the extent that it compensates the lender for the actual loss sustained as a result of the prepayment period. In re Outdoor Sports Headquarters, Inc., 161 B.R. at 424. However, other courts considering the question have held that the determination should be made as of the time of the loan. Skyler Ridge, 80 B.R. at 504 (In

determining whether a prepayment penalty is reasonable "the court is not entitled to roll the clock forward and see what has actually happened. Instead, the court is required to evaluate the reasonableness . . . from the viewpoint of the parties at time of contracting."); In re Vanderveen Estates Holdings, Inc., 283 B.R. 122, 133 (Bankr. E.D.N.Y. 2002) (Assessing reasonableness at the time of the loan accords a proper "deference to the parties' contractual choices" rather than "evaluat[ing] those choices in hindsight.").

It is this Court's opinion that reasonableness should be assessed as of the time that the loan is made because that approach recognizes the parties' freedom to contract as they see fit, and, because it is more consistent with the justification for liquidated damages provisions which is to provide a mutually agreeable measure of damages in cases where actual damages could not be precisely calculated. If actual damages cannot be calculated, it would be impossible to use actual damages to measure the reasonableness of a prepayment penalty.

## II. The UPS Prepayment Penalty

In this case, UPS has failed to carry its burden of showing that the prepayment penalties, viewed as of the time that the loans were made, amounted to a reasonable estimate of the loss that UPS was likely to sustain in the event of a breach. The bankruptcy judge found that Dahms was "clueless" as to how the formula

prescribing the prepayment penalties was established. That finding is supported by the following exchange during the December 15 hearing:

THE COURT: Can I ask a maybe a preliminary catch all kind of a question. Do you - are you familiar with how the prepayment penalties are derived or arrived at, when these contracts are entered into?

DAHMS: Not specifically, Your Honor.

THE COURT: You're not.

DAHMS: No.

Moreover, even if the determination of reasonableness were based on any actual losses sustained by UPS, UPS would not be entitled to recover for the debtors' prepayment for two reasons. First, if UPS's actual losses could be proven, there would have been no justification for a prepayment penalty. In addition, UPS has failed to satisfactorily prove what actual damages, if any, it sustained.

**Conclusion**

For all of the foregoing reasons, the Bankruptcy Court's January 19, 2005 order disallowing UPS's claim for prepayment penalties on the $5 million and $2 million notes is affirmed.

IT IS SO ORDERED,

Ernest C Torres

Ernest C. Torres, Chief Judge
Date: November 3 , 2006